UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D

OCT 3 1 2005

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 04-475-GWU

ROBERT RIDNER,                                                                PLAINTIFF,

VS.                              **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,                          DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of his application for Disability Insurance Benefits (DIB). The appeal is

currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.    Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2.    Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3.    Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

Ridner

4.   Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.   Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.   Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7.   Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

2

Ridner

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1)

3

Ridner

whether objective medical evidence confirms the severity of the alleged
pain arising from the condition; or (2) whether the objectively
established medical condition is of such a severity that it can
reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir.
1986).

Another issue concerns the effect of proof that an impairment may be
remedied by treatment. The Sixth Circuit has held that such an impairment will not
serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health
and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same
result does not follow if the record is devoid of any evidence that the plaintiff would
have regained his residual capacity for work if he had followed his doctor's
instructions to do something or if the instructions were merely recommendations.
Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106,
1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before
it, despite the plaintiff's claims that he was unable to afford extensive medical work-
ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir.
1987). Further, a failure to seek treatment for a period of time may be a factor to be
considered against the plaintiff, Hale v. Secretary of Health and Human Services,
816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

Ridner

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

6

Ridner

may be required to consult a vocational specialist.  Damron v. Secretary, 778 F.2d

279, 282 (6th Cir. 1985).   Even then, substantial evidence to support the

Commissioner's decision may be produced through reliance on this expert testimony

only if the hypothetical question given to the expert accurately portrays the plaintiff's

physical and mental impairments.  Varley v. Secretary of Health and Human

Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Robert Ridner, was found by an Administrative Law Judge (ALJ)

to have "severe" impairments consisting of gastroesophageal reflux disease, high

blood pressure, and degenerative disc disease.  (Tr. 18).  Nevertheless, based in

part on the testimony of a vocational expert (VE), the ALJ determined that Mr. Ridner

retained the residual functional capacity to perform a significant number of jobs

existing in the economy and, therefore, was not entitled to benefits. (Tr. 20-3).  The

Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE hypothetical questions

which differed only in assuming that the claimant could lift either "light" or

"sedentary" level weights.  The first hypothetical question asked the VE to assume

a person of the plaintiff's age, education, and work experience could perform light

level exertion, and also had the following non-exertional impairments. (Tr. 335).  He:

(1) could not crouch, crawl, push/pull with the lower extremities, and could perform

7

no overhead reaching or climbing of ladders, ropes, or scaffolds; (2) could occasionally stoop, balance, bend from the waist to the floor, kneel, and climb stairs or ramps; (3) could have no exposure to vibration, excessive humidity, or hazardous conditions such as moving machinery or unprotected heights; and (4) would also require a sit/stand option. (Id.). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the regional and national economies. (Tr. 335-6). If the individual were limited to sedentary level work with the same non-exertional restrictions, the VE testified that there would still be jobs that he could perform. (Tr. 336).

The ALJ determined that from the plaintiff's alleged onset date of October 16, 2001 until March 21, 2004 ("the first period"), he was capable of light level exertion with the above restrictions, and from March 22, 2004 through the date of the decision ("the second period"), the non-exertional restrictions were the same, but the plaintiff would be restricted to sedentary level exertion. (Tr. 20).

On appeal, this Court must determine whether the administrative decision is supported by substantial evidence. For the reasons stated below, the Court finds that, while substantial evidence supports the ALJ's determination for the first period, a remand will be required for the second period.

Mr. Ridner alleged disability due to low back and right leg pain after a lifting accident in October, 2001 (Tr. 72), for which neurosurgeon Dr. Amr O. El-Naggar

8

eventually performed an L3-4 and L4-5 fusion with BAK cages and pedicle screws on August 22, 2002. (Tr. 205, 244-50).

Dr. El-Naggar was the only treating source to give an opinion regarding functional capacity. By October 28, 2002, he stated that the plaintiff was making good progress, had no evidence of nerve root compression, and would discuss restrictions in another four weeks, but these would likely "be around 20 pounds lifting" with a "limited bending restriction" and a restriction from "sitting, standing, or walking more than one hour at a time." (Tr. 242). On November 20, 2002, the physician opined that Mr. Ridner was continuing to progress, and, although he still had some residual discomfort, he "will need to be allowed to go back to light work," with no lifting more than 20 pounds, and no activities requiring repetitive bending and twisting of the back. (Tr. 241). He thought that the plaintiff would have a 23 percent impairment by the AMA guidelines. Finally, in a letter written February 4, 2003, Dr. El-Naggar gave his patient's history, opined Mr. Ridner had done reasonably well since his fusion surgery "even though he has not been able to return to work and has not been able to return to his activities of daily living." (Tr. 239). The physician opined that Mr. Ridner could not lift, push, or pull more than 20 pounds, and was "restricted to limited bending, sitting, and standing, and walking for more than one hour." (Tr. 239). He then added: "He is not able to return to work." (Id.).

9

In the meantime, the plaintiff had undergone a consultative physical examination by Dr. Jeff Reichard on October 27, 2002, prior to the time that the treating physician found he had reached maximum medical improvement. In any case, Dr. Reichard found that the plaintiff had difficulty bending forward at the waist to 20 degrees, had a positive straight leg raising test at 30 degrees, had normal sensation and reflexes, and could only squat 50 percent of normal due to unsteadiness. (Tr. 231). He was also somewhat uncomfortable in both the sitting and standing positions, and required assistance getting on the examination table as well as sitting up afterwards. (Tr. 232-3). Dr. Reichard did not prepare a functional capacity assessment, but on March 6, 2003, Dr. David Swan, a non-examining source, reviewed the evidence to that point, and concluded that the plaintiff could perform light level exertion, with a total of six hours of sitting, standing, or walking in an eight-hour day with breaks at two hour intervals, could never climb ladders, ropes, or scaffolds, could occasionally climb ramps and stairs, stoop, crouch, and crawl, and needed to avoid concentrated exposure to vibration. (Tr. 283-90). Dr. Swan indicated that he gave Dr. El-Naggar considerable weight in completing his opinion, but did not mention the treating physician's restrictions on sitting and standing. (Tr. 289).[1]

---

[1]Another apparently non-examining state agency reviewer, identified as "Keith Rowland SDM," had completed an earlier evaluation with the same restrictions (Tr. 275-82). This individual was identified in the ALJ's decision as "Dr. Keith Rowland, M.D.,"

10

Ridner

There are no office notes from Dr. El-Naggar between November 20, 2002, and January 28, 2004, when the plaintiff was seen again with complaints of increased back pain "above where he had the surgery before." (Tr. 313). Dr. El-Naggar reviewed MRI scans of the plaintiff's thoracic and lumbosacral spines, which had been obtained on December 4, 2003. The T-spine MRI showed mild degenerative changes at T11-T12 with narrowing, desiccation, and posterior protrusion but no significant thecal sac stenosis, and an incidental finding of a C5-C6 disc protrusion. (Tr. 310). The lumbosacral spine MRI showed postoperative changes from the fusion, but no stenosis and normal spine alignment. (Tr. 311). Dr. El-Naggar commented that Mr. Ridner still had loss of disc height at T11-T12, "which is the disc we were watching before." (Tr. 313). At the level of the surgery, there appeared to be a "good solid fusion at two levels." The physician stated that he reassured his patient, and that if his pain worsened "down the road" he could be referred for epidural steroid injections. (Id.).

On March 22, 2004, without evidence of any subsequent examinations, Dr. El-Naggar completed a physical residual functional capacity assessment limiting the plaintiff to lifting 10 pounds occasionally and five pounds frequently, standing two

---

and the ALJ stated that he had performed a consultative physical examination of Mr. Ridner. (Tr. 19). If Rowland was a medical doctor, there is no evidence of his qualifications in the transcript (and no indication of what the initials "SDM" signify), and there is no evidence of any physical examination.

hours in an eight-hour day, no more than 30 minutes without interruption, sitting two hours in an eight-hour day, no more than 30 minutes without interruption, never crouching or crawling, occasionally climbing, balancing, and kneeling, and also limiting pushing, pulling, reaching, working around heights, moving machinery, humidity, and vibration. (Tr. 314-17). The reasons given were the plaintiff's fusion at L3 through L5, a "disc abnormality at T11-12" (Tr. 314) and that standing for more than one-half hour at a time would "stress the T11-12 disc causing mechanical back pain," while "sitting creates pressure on discs 4X as much as standing and walking." (Tr. 315).

In his decision, the ALJ did not mention Dr. El-Naggar's opinion that the plaintiff was not able to return to work, although he made a general comment that statements that a claimant is unable to work are not entitled to controlling weight under the Commissioner's regulations. (Tr. 19).[2] The ALJ stated that he rejected Dr. El-Naggar's sitting, standing, and walking limitations due to the plaintiff's testimony that he "sits in a recliner all day and even sleeps in it," which was "contradictory to the treating physician's opinion that the claimant could not sit for more than 1 hour with 30 minute breaks." (Id.). While finding that Mr. Ridner's lifting capacity declined between the first period and the second period, the ALJ still found

---

[2]The Commissioner suggests that Dr. El-Naggar's comment referred only to Mr. Ridner's past work as a furniture mover.

Ridner

that in both periods he could perform essentially full-time standing/walking/sitting, albeit with an unspecified (but presumably at will) sit/stand option.

For the first period, although the question is a close one, there is substantial evidence to support the ALJ's choice of hypothetical factors. The hypothetical is supported by Dr. Swan's opinion, and Dr. El-Naggar's opinions were somewhat ambiguous, if not contradictory, regarding the total amount of standing/walking/sitting the plaintiff could perform. Certainly, one of his statements clearly contemplated a return to work at the light level, and another allowed sitting, standing or walking but no more than one hour "at a time," but with no restriction on daily totals. (Tr. 241-2). There is also an indication in the report of a vocational specialist, Betty Lindsey Hale, that Dr. El-Naggar gave "permanent restrictions" of no lifting, pulling, or pushing more than 20 pounds along with a requirement for alternating sitting, standing, and walking every ½ hour on January 15, 2003 (Tr. 263); this report is not in the Court transcript. However, it would be consistent with the ALJ's functional capacity finding for the first period.

For the second period, which concerns Dr. El-Naggar's March 22, 2004 assessment, the ALJ's decision is not supported by substantial evidence. The plaintiff's testimony that he spent almost all of his time reclining with his feet up (Tr. 331) does not clearly contradict Dr. El-Naggar's sitting and standing restrictions, particularly given the physician's rationale, which was not mentioned by the ALJ. It

13

Ridner

is also notable that, although Dr. El-Naggar gave different opinions at different times, he did not state at any point that Mr. Ridner could sit for no more than one hour with 30 minute breaks. Dr. El-Naggar's 2004 opinion, partially based on new evidence unavailable to the reviewer Dr. Swan, is uncontradicted by any other medical opinion. Particularly since it is from a treating source, the Court finds that the evidence is inadequate to dismiss this opinion, and a remand will be required for additional medical evidence if it is to be rejected.

An order and judgment will be issued affirming the decision through March 21, 2004 and remanding the decision for consideration of the plaintiff's condition after that date.

This the _____31_____ day of October, 2005.

G. WIX UNTHANK
SENIOR JUDGE